IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-244-D

| | |
|---|---|
| DELORIS PHILLIPS HOGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

Deloris Phillips Hogan ("Hogan" or "plaintiff") challenges the final decision of Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying her application for social security benefits. Hogan moved for summary judgment [D.E. 17] and filed a memorandum in support [D.E. 18], and the Commissioner moved for judgment on the pleadings [D.E. 19] and filed a memorandum in support [D.E. 20]. As explained below, the court grants the Commissioner's motion, denies Hogan's motion, and affirms the Commissioner's final decision.

I.

On July 29, 2010, Hogan applied for benefits and claimed she was disabled. Transcript of Proceedings ("Tr.") 208–09. On her application, Hogan claimed that she became disabled on March 13, 2009. Id. 208. The Social Security Administration ("SSA") found that Hogan was not disabled, and denied her application. Id. 148–51. Upon Hogan's request, the SSA reconsidered her application, but again denied it. Id. 158–60. Hogan then requested and received a hearing before an Administrative Law Judge ("ALJ"). See id. 38–75, 162–63. On September 7, 2012, the ALJ denied Hogan's claim. Id. 20–32. Hogan timely sought review with the Appeals Council, to no

avail. Id. 1–3. Hogan timely sought judicial review. [D.E. 1]; see 42 U.S.C. § 405(g).

In reviewing the Commissioner's denial of benefits, a district court is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the Commissioner applied the correct legal standards. See 42 U.S.C. § 405(g); Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla of evidence but may be somewhat less than a preponderance. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). When reviewing for substantial evidence, the court does not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), superseded by regulation on other grounds, 20 C.F.R. § 416.927(d)(2). To determine whether a decision is supported by substantial evidence, the court must determine whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439–40 (4th Cir. 1997).

In evaluating disability claims, the Commissioner follows a familiar five-step process. The Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to the claimant's past relevant work; and (5) if not, could perform any other work in the national economy. See 20 C.F.R. § 416.920(a)(4). The claimant has the burden of production and proof in steps one through four. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). If the process reaches the fifth step, the Commissioner has the burden of proving that the claimant, despite impairments, can perform a job that exists in significant numbers in the national economy. See id.; Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

2

## II.

At her hearing, Hogan testified that she has not had a job since March 13, 2009, the day she claims she became disabled. Tr. 47. Before that date, she worked at various times as an equipment-rental clerk and as a heavy-equipment operator. Id. 47–49. Since 1998, when she was involved in a car accident, she also has been dealing with various types of pain. Id. 57; see id. 304 (describing the car accident).

Hogan testified at length about her health. According to Hogan, she has pain in her neck every day. Most days the pain is a five or six on a scale from one to ten, but some days it can be a nine or ten. Tr. 50. She has back pain "all the time" at a seven or eight on a one-to-ten scale. Her back pain often radiates into her right leg, which sometimes gives out, causing her to fall. Id. 50–51. She cannot raise her left arm above her head because her left elbow "kills" her. Id. 61. She cannot bend her right arm at the elbow without "severe pain." Id. 62. In addition to the pain, she experiences loss of sensation, numbness, and tingling in her right arm and fingers. Id. 63. She has carpal tunnel syndrome, which prevents her from grabbing things and causes pain at about an eight or nine on a one-to-ten scale. Id. 51–52. At some point, her doctor mentioned carpal tunnel release surgery to her, but she cannot afford the surgery. Id. She frequently has migraine headaches. They can be brought on by moving her right arm in a particular way or by moving her neck excessively. Id. 52, 60–61. When she gets a migraine, it "starts at the back of the head and covers [her] whole head until [she is] throwing up." Id. 52. In order to mitigate the migraines, she has blocked out all light from her house. Id. With medication, the migraines ease up. Id. 53. She has been diagnosed with sleep apnea, but does not use a continuous-positive-airway-pressure machine because she cannot afford one. Id. She has ovarian cysts, which cause her pain at an eight or nine on a one-to-ten scale. She needs a complete hysterectomy, but has not scheduled one because she cannot afford it.

3

Instead, she is just waiting for one of the cysts to burst so that she can have the hysterectomy done as an emergency procedure. Id. 53–54. For the past year or year and a half, her feet have ached badly enough that she has to prop her legs up about half the day. Id. 65. She is depressed, but takes medicine, which helps "some." Id. 53. Finally, she fell and hurt her knee and does not know what is wrong with it. Id. 57.

Hogan testified that, as a result of her poor health, she has the following limitations. She can sit for fifteen or thirty minutes before having to get up, and after about fifteen minutes of standing, she gets uncomfortable. Id. 56. She can lift light objects, but it is hard for her to get down low enough to pick anything up off of the floor. Id. 57. She has trouble retrieving small objects off of a flat surface. Id. 64. She can hold a cup of coffee for only a minute or two before feeling like she would drop it. Id. She can type or write for only two or three minutes before having to stop. Id. Before her health problems developed, she "could bench press like 300 pounds, but now, [she] can't even hold a gallon of water." Id. 63–64. When given a task, she "just can't seem to get together and comprehend basically what [she's] supposed to do." Id. 65. She also lacks energy. Id. 66.

Dr. Cary Washington, a vocational expert, also testified at the hearing. Dr. Washington testified that a hypothetical individual with similar limitations to those claimed by Hogan would not be able to perform Hogan's past relevant work, but would be able to work as a linen grader, a marker, or a ticket taker. Id. 68–69. If that same hypothetical individual was further limited to only sedentary work, Dr. Washington testified, she would be able to work as a telephone quotation clerk, surveillance systems monitor, or weight tester. Id. 69.

The ALJ followed the prescribed five-step process. At step one, the ALJ found that Hogan had not worked during the alleged disability period. Id. 22. At step two, the ALJ found that Hogan has the following severe impairments: "degenerative disc disease of the lumbar spine, degenerative

4

disc disease of the cervical spine, status post cervical fusion of the cervical spine, depression, cognitive disorder, and bilateral nerve entrapment of the elbows." Id. At step three, the ALJ found that none of Hogan's impairments meet or medically equal any potentially applicable listings. Id. At step four, the ALJ found that Hogan is unable to perform any of her past relevant work. Id. 30. At step five, the ALJ found that Hogan is capable of performing jobs that exist in significant numbers in the national economy, and accordingly is not disabled under the Social Security Act. Id. 31–32.

Hogan contends that substantial evidence does not support the ALJ's determination. Pl. Br. [D.E. 18] 8. Specifically, she argues that the ALJ did not give sufficient weight to the opinion of Dr. Raval, her treating physician. Id. 8–11.

Dr. Raval was Hogan's treating physician between May 2010 and July 2012. See Tr. 659–92. The ALJ described Dr. Raval's treatment history as follows:

> Physical examinations on the majority of the office visits were unremarkable with the only abnormality noted being occasional motor deficits neurologically. In fact on July 26, 2011, [Hogan] stated she was not having any medical issues. . . . Dr. Raval never placed any restrictions on the claimant as far as lifting, walking, sitting or standing; in fact the office visits were mainly for medication management.

Tr. 26 (citations omitted). Nevertheless, upon Hogan's request in connection with seeking benefits, Dr. Raval provided her with a letter in July 2012 containing the following assertions:

- [Hogan] should not perform a job requiring her to lift more than five pounds.
- She cannot walk, stand, or be on her feet for more than fifteen minutes at a time and no more than one hour per day.
- She cannot perform a job that would require her to reach, grip, handle, finger, push, or pull with both upper extremities for more than two hours per day and no more than fifteen minutes at a time.
- She cannot sit for extended periods of time due to her pain.
- Her pain and headaches prevent her from being able to concentrate, focus, or maintain attention for extended periods of time. She would be off task at least 20% of the time and would have to miss work at least two days per month due to her severe p[a]in and depression.

5

Tr. 658.

The Social Security Act's implementing regulations require that a treating physician's opinion be given controlling weight if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); see, e.g., Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. "[T]he ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro, 270 F.3d at 178.

If a treating physician's opinion does not merit controlling weight, the ALJ is to evaluate it using the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the extent to which the opinion is consistent with the record as a whole; (5) the relevance of the physician's medical specialization to the opinion; and (6) any other factor that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)–(6); see SSR 96-2p, 1996 WL 374188, at *4; Radford v. Colvin, 734 F.3d 288, 295–96 (4th Cir. 2013); Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006); Johnson, 434 F.3d at 654; Craft v. Apfel, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam) (unpublished table decision); Craig, 76 F.3d at 589–90; Regan v. Colvin, No. 7:12-CV-136-D, 2013 WL 5218226, at *4–6 (E.D.N.C. Aug. 20, 2013) (unpublished), M&R adopted, 2013 WL 5242348 (E.D.N.C. Sept. 17, 2013) (unpublished). The ALJ need not discuss all of these factors, but must give good reasons for the weight assigned to a treating source's opinion. See, e.g., Fitzgerald v. Colvin, No. 2:12-CV-

78-D, 2013 WL 6178563, at *4 (E.D.N.C. Nov. 25, 2013) (unpublished) (collecting cases); Ware v. Astrue, No. 5:11-CV-446-D, 2012 WL 6645000, at *2 (E.D.N.C. Dec. 20, 2012) (unpublished); 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188, at *5. A district court will not disturb an ALJ's determination as to the weight to be assigned to a medical opinion (including the opinion of a treating physician) absent some indication that the ALJ has dredged up "specious inconsistencies" or has not given good reason for the weight afforded a particular opinion. See Craft, 1998 WL 702296, at *2 (quoting Scivally v. Sullivan, 966 F.2d 1070, 1077 (7th Cir. 1992)); see also Hines, 453 F.3d at 563; Johnson, 434 F.3d at 654; Craig, 76 F.3d at 589–90.

Here, the ALJ afforded "relatively little weight to Dr. Raval's opinion," and justified that decision by noting that "[i]t appears Dr. Raval relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported, despite the fact that his opinion is not even supported by his own treatment records." Tr. 27. After examining Dr. Raval's opinion, along with the opinions of six non-treating sources—four examining sources and two nonexamining sources—the ALJ concluded that "Hogan's subjective pain complaints are not fully credible," noting an "inconsistency of subjective complaints versus objective findings on examination." Id. 30 (emphasis in original). The ALJ noted that he had "generously considered [Hogan's] subjective complaints," and in determining Hogan's residual functional capacity had "take[n] full account of the objective findings, incorporate[d] the recommended limitations of the consultative and review physicians, and accord[ed] [Hogan] every reasonable benefit of the doubt." Id.

The ALJ gave good reasons for affording Dr. Raval's opinion little weight. The ALJ determined Dr. Raval's opinion to have been unsupported by medical evidence and inconsistent with the record as a whole. These are factors that the regulations specifically authorize the ALJ to

7

consider. See 20 C.F.R. § 404.1527(c)(3)–(4). Substantial evidence supports the ALJ's treatment of each factor. In determining whether medical evidence supported Dr. Raval's opinion, the ALJ thoroughly discussed Dr. Raval's treatment notes, citing in particular that Hogan's visits had been mostly unremarkable, that she stated to Dr. Raval on at least one occasion that she was having no medical issues, and that Dr. Raval failed, during any of Hogan's visits to him, to place any restrictions on her as far as lifting, sitting, walking, or standing. Tr. 26. In determining whether Dr. Raval's opinion was consistent with the record as a whole, the ALJ thoroughly analyzed the various other medical opinions in the record. Id. 26–30. For example, the ALJ cited the opinion of Dr. Cohen, a physician who examined Hogan in October 2010 and found that Hogan's ability to lift and move about is only moderately impaired, her ability to carry and handle objects is only mildly impaired, and her ability to sit, stand, hear, speak, and travel is not impaired. Id. 27. Dr. Cohen also rated the reliability of Hogan's self report concerning her history and conditions to be poor. Id. 432–34. The ALJ also cited the opinion of Dr. Hatfield, an examining psychologist, that although Hogan has "mild auditory and visual memory deficits and . . . is estimated to function in the low average range of intellectual ability," she "can tolerate a simple working relationship and . . . repetitive mental tasks." Id. 27–28. The ALJ also cited the opinion of Dr. Whitmer, another examining physician, that Hogan "seemed to be in a lot of pain, but there also seemed to be some exaggeration and unwillingness for her to do some of the things during the examination." Id. 28. The ALJ also cited the opinion of David C. Johnson, M.A. and Edward Crane, Ed.D., more examining psychologists, that Hogan "appeared to be functioning at a low average range," and "appeared capable of understanding instructions adequately to perform simple, routine[,] and repetitive tasks." Id. 28–29. Finally, the ALJ cited the opinions of two non-examining, state-agency physicians, one of whom found that Hogan was capable of medium work activity, and the other of

8

whom found that Hogan was capable of light work activity. Id. 29–30; see also id. 120–31 (opinion of Dr. Dakota Cox), 133–46 (opinion of Dr. Robert Pyle). All of these opinions were inconsistent with Dr. Raval's statements about Hogan's limitations. Thus, substantial evidence supported the ALJ's decision to afford Dr. Raval's opinion "relatively little weight."

III.

In sum, the court GRANTS the Commissioner's motion for judgment on the pleadings [D.E. 19], DENIES Hogan's motion for summary judgment [D.E. 17], and AFFIRMS the Commissioner's final decision. The action is DISMISSED. The clerk shall close the case.

SO ORDERED. This **23** day of December 2013.

JAMES C. DEVER III
Chief United States District Judge